UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**UNITED STATES OF AMERICA,**

**v.**

**KENNETH AUSTIN HARBIN**                    **CASE NO. SA-24-CR-00305-JKP**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court is Defendant Kenneth Austin Harbin's motion, pursuant to Federal Rule of Criminal Procedure 12, to dismiss counts two and three of the Indictment, charging Defendant with violating 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(c). ECF No. 24. Defendant argues the Court should dismiss the charges because they are unconstitutional, both facially and as applied to him, under the Second Amendment standard articulated by the Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S.Ct. 2111 (2022). *Id*. Defendant also argues 18 U.S.C. § 922(g)(1) violates the Commerce Clause. *Id*. Defendant recognizes his Second Amendment facial challenge, as well as his Commerce Clause challenge, are foreclosed by Fifth Circuit precedent. *Id*.; *see, e.g., United States v. Alcantar*, 733 F.3d 143 (5th Cir. 2013); *United States v. Diaz*, 116 F. 4th 458 (5th Cir. 2024). For the reasons discussed herein, the Court **DENIES** Defendant's motion in part, and **DEFERS** ruling on Defendant's § 924(c) as applied challenge.

BACKGROUND

In May 2024, law enforcement officers executed a search warrant at Defendant's apartment and discovered approximately 112 grams of methamphetamine, two pistols, ammunition, scales, and packing materials. ECF 27 at 1–2.

Subsequently, on June 6, 2024, a grand jury issued a three-count indictment against Defendant, charging him with the following offenses: (1) possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841; (2) felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1); and (3) possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c). ECF No. 11.

## I. The 2012 Aggravated Robbery Judgment Detailing the Predicate Offense for the 18 U.S.C. § 922(g)(1) Charge

Government's exhibit 1, a fifteen page document attached to its response, details the facts leading to Harbin's 2012 felony judgment for aggravated robbery. ECF 27-1. The November 21, 2013, judgment reflects the following: (1) Harbin's offense of conviction was aggravated robbery in violation of Texas Penal Code §29.03; (2) the offense occurred on September 11, 2012; (3) Harbin entered a plea of nolo contendere to the charge; and (3) Harbin was sentenced to 10 years confinement, a fine, court costs, and was required to pay restitution to the victim of the crime. *Id*. at 1.

On September 11, 2012, San Antonio Police Officers were dispatched to an apartment complex located at 9511 Perrin Beitel regarding a robbery. *Id*. at 5. Upon arrival, officers spoke with the victim who informed them he had been robbed at gunpoint by a man he met at a pawn shop located at 9433 Perrin Beitel. *Id*. The victim went to the pawn shop to pawn a television. *Id*. The victim, dissatisfied with the pawn shop owner's offer for the television, began to leave the shop when he encountered Harbin. *Id*. Harbin was in line behind the victim in the pawn shop. *Id*. Harbin offered to buy the television from the victim and pay more than the shop owner's offer. *Id*. Harbin told the victim to meet him outside to "make sure the TV works." *Id*. The victim went outside and waited for Harbin. The victim then allowed Harbin to place the television in Harbin's vehicle, a white Nissan Altima owned by Harbin's mother. *Id*. Harbin fled the scene with the

television in his vehicle. *Id*. The victim followed Harbin to the apartment complex at 9511 Perrin

Beitel to obtain Harbin's license plate and attempt to retrieve the television. *Id*. The victim pulled

next to Harbin's vehicle. *Id*. Harbin pulled out a gun and demanded the victim get out of his

vehicle. *Id*. Harbin left the scene in the victim's vehicle and a woman fled the scene in Harbin's

vehicle. *Id*. The follow up narrative of the police report reflects when the victim pulled up next to

the car Harbin was driving, Harbin got out of his car and pointed the gun at the victim demanding

money and property. *Id*. at 6. The victim stated Harbin demanded he get out of his vehicle. *Id*. The

victim complied, and Harbin drove away in the victim's vehicle. *Id*. Officers learned the white

Nissan Altima Harbin was originally driving was located at his sister's house, approximately two

miles from 9511 Perrin Beitel. *Id*. Officers observed the Nissan Altima exit the garage and believed

Harbin was driving the car. *Id*. When officers attempted to conduct a traffic stop, Harbin fled,

jumped the center median, and crashed into a car wash. *Id*. Harbin fled on foot but was

apprehended. *Id*.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 12 provides "[a] party may raise by pretrial motion

any defense, objection, or request that the court can determine without a trial of the general issue."

Fed. R. Crim. P. 12(b)(1). If a pretrial motion presents a question of law in a case involving

undisputed facts, Rule 12 authorizes the court to rule on the motion. *United States v. Flores*, 404

F.3d 320, 325 (5th Cir. 2005); *see* Fed. R. Crim. P. 12(d) (permitting the court to rule on a motion

involving factual issues provided the court states its essential findings on the record); *see also,*

*United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994) ("a pretrial dismissal is essentially a

determination that, as a matter of law, the government is incapable of proving its case beyond a

reasonable doubt."). Otherwise, the court would waste resources by allowing a case to proceed to

trial and later dismissing it based on the same legal argument and facts presented through a pretrial motion. *See Flores*, 404 F.3d at 325.

## ANALYSIS

I. **Defendant's Challenges to 18 U.S.C. § 922(g)(1)**

A. **As Applied Challenge**

Harbin argues 18 U.S.C. § 922(g)(1) ("§ 922(g)(1)") is unconstitutional under the Second Amendment as applied to him because "the government cannot show a Founding era tradition of disarming individuals with criminal histories like Harbin's." ECF No. 24 at 4. Harbin further argues "even if the government shows such a tradition under [*United States v. Diaz*'s] as-applied analysis, that is wrong." *Id*. (citing *United States v. Diaz*, 116 F. 4th 458 (5th Cir. 2024)). Harbin notes his argument based on *Diaz* is foreclosed. *Id*.

The Fifth Circuit's opinion in *United States v. Diaz* is directly on point and supports denial of Harbin's as applied challenge to § 922(g)(1). 116 F. 4th 458 (5th Cir. 2024). Here, like *Diaz*, the plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1). *Id*. at 467. Therefore, the burden shifts to the government to "demonstrate that regulating [Harbin's] possession of the firearm is consistent with the Nation's historical tradition of firearm regulation." *Id*. To meet its burden, "the government must identify a well-established and representative historical analogue, not a historical twin." *Id*. "Evidence must be relevantly similar to the challenged law." *Id*. In this case, as in *Diaz*, the government points to "laws (1) focusing on how our Nation punished felons; and (2) disarming certain classes of persons." *Id*.

In assessing predicate offenses under § 922(g)(1), a court "may consider prior convictions that are punishable by imprisonment for a term exceeding one year." *Id*. Similar to *Diaz*, Harbin was convicted of aggravated robbery involving the taking or theft of a vehicle. Texas' aggravated

robbery statute, section 29.03 of the Texas Penal Code, states "a person commits an offense if he commits robbery as defined in Section 29.02, and he: uses or exhibits a deadly weapon. *See* Tex. Penal Code § 29.03(a)(2). The robbery statute, section 29.02 of the Texas Penal Code, states:

(a)  A person commits an offense if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he:

   (1)  intentionally, knowingly, or recklessly causes bodily injury to another; or

   (2)  intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

Theft is committed under Texas law when a person "unlawfully appropriates property with intent to deprive the owner of property." *See* Tex. Penal Code § 31.03. Harbin, therefore, committed aggravated robbery by taking, in accordance with the statutory language of Tex. Penal Code § 31.03, the victim's vehicle by using or exhibiting a deadly weapon. The government must demonstrate our Nation has a longstanding tradition of disarming someone with a criminal history similar to Harbin's.

The government here, like in *Diaz*, points to historical laws authorizing capital punishment and estate forfeiture as consequences for felonies. *Diaz*, 116 F.4th at 467. The Fifth Circuit, in *Diaz*, determined the government met its burden by relying on historical examples related to capital punishment, estate forfeiture, and laws targeting the crime of theft, which was a felony at the time of the founding. *Id*. 467-469. The court conducted its own research and found the closest colonial analogue to vehicle theft were individuals convicted of horse theft and that these individuals were often subject to the death penalty. *Id*. at 468. The Fifth Circuit determined these "colonial-era laws correspond to the law against theft of a vehicle that serves as a predicate offense for Diaz's § 922(g)(1) charge." *Id*. These same colonial era laws correspond to Harbin's aggravated robbery, in which he took his victim's vehicle while using or exhibiting a deadly weapon. These laws

establish "that our country has a historical tradition of severely punishing people like [Harbin] who have been convicted of [aggravated robbery]." *Id*. at 468-469.

The court in *Diaz* also addressed *Bruen's* two central considerations of "why" and "how" regarding § 922(g)(1). *Id*. at 469. Capital punishment in colonial America addressed three main interests: (1) deterrence; (2) retribution; and (3) penitence. *Id*. at 469. Historical laws similar to § 922(g)(1) were "enacted to bar possession of a firearm from persons whose prior behaviors have established their violent tendencies." *Id*. Regarding the "how," these laws permanently punished individuals just as § 922(g)(1) does. *Id*. The court noted that the majority of estate forfeiture laws did not allow offenders to regain their property. *Id*. The court reasoned "if capital punishment was permissible to respond to theft, then the lesser restriction of permanent disarmament that § 922(g)(1) imposes is also permissible." *Id*. The same reasoning applies to individuals convicted of aggravated robbery. Harbin's predicate offense for the § 922(g)(1) charge—aggravated robbery (or theft by force)—was a felony and "thus would have led to capital punishment or estate forfeiture." *Id*. at 470. Disarming Harbin fits within the tradition of serious and permanent punishment. The Fifth Circuit also relied on "going armed laws" to find the government met its burden under the *Bruen* framework. *Id*. at 470-471. This Court follows the Fifth Circuit's lead and finds colonial-era statutes that prohibited going armed offensively and authorized forfeiture of weapons as punishment serve as relevantly similar historical analogues to § 922(g)(1).

### B.    Facial Challenge

Harbin also brings a facial challenge to § 922(g)(1). As the *Diaz* Court recognized, in a facial challenge, "the challenger must establish that no set of circumstances exists under which the statute would be valid." *Diaz*, 116 F.4th at 471-472 citing *United States v. Salerno*, 481 U.S. 739,

745 (1987). Because § 922(g)(1) is constitutional as applied to the facts of his own case, Harbin's facial challenge fails. *Id*. citing *United States v. Rahimi*, 602 U.S. 693 (2024).

### C.    Commerce Clause Challenge

Turning to Harbin's remaining challenge, Fifth Circuit precedent forecloses Harbin's Commerce clause argument. The Fifth Circuit has consistently rejected Commerce Clause arguments to § 922(g)(1). *See*, *e.g.*, *United States v. Alcantar*, 733 F.3d 143, 145 (5th Cir. 2013); *United States v. Nichols*, 2022 WL 5401942, at *1 (5th Cir. Oct. 6, 2022) (per curiam), *cert. denied*, 143 S. Ct. 827 (2023). As such, Harbin's Commerce Clause argument fails and his motion in this regard is therefore denied.

## II.    Defendant's Challenges to 18 U.S.C. § 924(c)

### A.    Facial Challenge

Harbin alleges 18 U.S.C § 924(c) ("§ 924(c))" is unconstitutional on its face and as applied to him. While the Fifth Circuit has not issued a post-*Bruen* opinion regarding the constitutionality of § 924(c), several district courts within the Fifth Circuit have issued post-*Bruen* opinions upholding the statute. Here, the government alleges the conduct § 924(c) proscribes is not covered by the plain text of the Second Amendment and even if the conduct is covered the statute is constitutional because it is consistent with our nation's historical tradition of firearm regulation.

In *United States v. Reyes*, the district court examined the constitutionality of § 924(c). 677 F.Supp.3d 585 (2023). In *Reyes*, the defendant was charged with conspiracy to distribute and possess with the intent to distribute fentanyl and possession of a firearm in furtherance of drug trafficking. *Id*. at 588. Reyes filed a motion to quash the § 924(c) charge based on *Bruen*. *Id*. Reyes alleged he carried the firearm that was the subject of the § 924(c) charge for self-defense. *Id*.

7

The court, citing the Supreme Court's decision in *District of Columbia v. Heller*, recognized the "textual command of the Second Amendment does not protect the right of citizens to carry arms 'for *any sort* of confrontation.'" *Id.* at 591 (citing *Heller*, 554 U.S. 570, 595 (2008)). The Supreme Court explained, regarding the Second Amendment, they "understood the right to enable individuals to defend themselves" and that "permitting a citizen to 'repel force by force' when the 'intervention of society in his behalf, may be too late to prevent an injury.'" *Id.* (citing *Heller*, 554 U.S. at 594-595). The plain text of the Second Amendment protects the individual right of self-defense. *Id.*

Concerning § 924(c), the court stated

Turning to the present case, to be convicted of violating 18 U.S.C. § 924(c), the Government must prove beyond a reasonable doubt that: (1) Defendant committed the predicate drug trafficking offense; and (2) Defendant, with the requisite *mens rea*, possessed the firearm "*in furtherance*" of the drug trafficking offense. 18 U.S.C. § 924(c)(1)(A). Following *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), Congress amended 18 U.S.C. § 924(c) to include the "possession-in-furtherance" language. *See United States v. Ceballos-Torres*, 218 F.3d 409, 413 (5th Cir.), *amended on reh'g in part*, 226 F.3d 651 (5th Cir. 2000). The Fifth Circuit explained that Congress intended 18 U.S.C. § 924(c) to require more than the "mere presence" of the firearm—i.e., the "generality [that] anytime a drug dealer possess a gun, that possession is in furtherance, because drug dealers generally use guns to protect themselves and their drugs." *Id.* at 414. The Fifth Circuit ultimately adopted the definition of "furtherance" as "[t]he act of furthering, advancing, or helping forward." *Id.* at 412, 415.

*Id.* at 591-592.

The statute requires the government to present evidence which establishes that defendant's possession of the firearm "actually furthered the drug trafficking offense." *Id.* at 592. The Second Amendment right does not provide a right to go on the offensive. *Id.* Ultimately the *Reyes* Court determined the conduct proscribed under § 924(c) is not covered by the plain text of the Second Amendment. *Id.* This Court agrees with that conclusion.

This Court also agrees with the *Reyes* Court that even if the conduct proscribed under § 924(c) is covered by the plain text of the Second Amendment, "the Nation's history and tradition articulates a historical analogue to 18 U.S.C. § 924(c)." *Id. See Bruen*, 142 S.Ct. 2111 at 2143 ("[These statutes] merely codified the existing common-law offense of bearing arms to terrorize the people, as had the Statute of Northampton itself."). The Court also reviewed and agrees with the district court's decision in *United States v. Young*. 2024 WL 534955 (W.D.La. Feb. 9, 2024). This Court understands that it is not bound by the decisions of other district courts, but the Court finds *Reyes* and *Young* persuasive and instructive on the question presented in Harbin's motion and the government's response concerning the constitutionality of § 924(c). Harbin's motion in this regard is therefore denied.

### B.   As Applied Challenge

Harbin also alleges § 924(c) is unconstitutional as applied to him. "It is axiomatic that a 'statute may be invalid as applied to one state of facts and yet valid as applied to another.'" *Reyes*, 677 F. Supp. 3d at 585 (citing *Ayotte v. Planned Parenthood of N. New England*, 126 S.Ct. 961, 967 (2006) (quoting *Dahnke-Walker Milling Co. v. Bondurant*, 42 S.Ct. 106 (1921))). Section 924(c) can be violated in one of two ways: "either (1) by using or carrying a firearm during and in relation to a drug-trafficking crime or crime of violence or (2) by possessing a firearm in furtherance of such a crime." *See* Fifth Circuit Pattern Jury Instructions (Criminal Cases), §§ 2.44A and 2.44B (2024). Pattern Jury Instruction 2.44A applies to the use or carrying offense, and 2.44B applies to the possession offense.[1]

---

[1] Fifth Circuit Pattern Jury Instruction 2.44B states "Title 18, United States Code, Section 924(c)(1), makes it a crime for anyone to knowingly possess a firearm in furtherance of a federal drug-trafficking crime [crime of violence]. For you to find the defendant guilty of this crime, you must be convinced that the government has proven each of the following beyond a reasonable doubt: First: That the defendant committed the crime alleged in Count _____. I instruct you that _____ is a federal drug-trafficking crime [crime of violence]; and Second: That the defendant knowingly possessed a firearm, and that possession was in furtherance of the defendant's commission of

Here, to convict Harbin of the § 924(c) offense, the government must prove at trial that he committed the predicate offense of possession with intent to distribute methamphetamine, that he knowingly possessed a firearm, and that possession was in furtherance of his commission of the predicate drug offense. These matters appear to be facts that must be established at trial to determine Harbin's conduct in relation to Harbin's alleged possession of the subject firearm. Once these facts have been established, the Court can determine whether § 924(c) is unconstitutional as applied to Harbin. Therefore, the Court will defer ruling on Harbin's § 924(c) as applied challenge until after the government has rested its case at trial. Defendant can either raise a Federal Rule of Criminal Procedure 29 motion for judgment of acquittal (which, if granted would dispose of count three of the indictment) and/or re-urge the as applied challenge for the Court's consideration.

## CONCLUSION

Based on binding Fifth Circuit precedent, the Court finds § 922(g)(1) is constitutional under the Second Amendment, under the standard articulated in the Supreme Court's *Bruen* decision, both facially and as applied to Defendant. The Court also finds § 924(c) is constitutional on its face, and therefore denies Defendant's facial challenge to that statute. The Court defers ruling on Defendant's § 924(c) as applied challenge because the facts needed to determine the legal question must be established at trial.

It is so ORDERED.
SIGNED this 9th day of January, 2025.

JASON PULLIAM
UNITED STATES DISTRICT JUDGE

---

the crime charged in Count _____. [Second: That the defendant aided and abetted _____ (name associate) in committing the drug-trafficking crime [crime of violence] alleged in Count ____, and knew in advance that _____ (name associate) would be armed.]. To prove the defendant possessed a firearm "in furtherance" of the drug-trafficking crime [crime of violence], the government must prove that the defendant's possession of the firearm furthered, advanced, or helped forward that crime."